United States District Court
Northern District of Indiana
Hammond Division

SAMUEL POPE JR.,

      Plaintiff,

      v.                            Civil Action No. 2:09-CV-301 JVB

GARY HOUSING AUTHORITY, et al.

      Defendants.

**OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants Woodlawn Community Development Corporation and Jana Blood (DE 72).

**A.**    **Background**

Samuel Pope, a pro se plaintiff, is a resident of a Gary Housing Authority ("GHA") unit known as the Al Thomas High Rise.[1] His claims against Defendants GHA, officers Hornyak, Gonzalez, and Hightower, the Gary Police Department, Woodlawn Community Development Corporation and its employee, Jana Blood, arise from a search of his apartment on August 10, 2009. He brings this action under 42 U.S.C. § 1983, alleging that the Defendants violated his Fourth Amendment right to be free from unreasonable searches.

**B.**    **Legal Standards**

---

[1] Plaintiff was originally represented by counsel, but his attorney has withdrawn and he has been unable to obtain new counsel. Defendants Woodlawn and Blood served Plaintiff with the notice to pro se litigants required by Northern District of Indiana Local Rule 56-1(f).

**(1)** *Summary Judgment*

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Although under Federal Rule of Civil Procedure 56(c)(3) the Court is need not consider materials not cited by the parties, it may consider other materials in the record.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v.*

*Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**(2)**     *Section 1983 Standard*

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of his rights guaranteed by the Fourth and Fourteenth Amendment.  Section 1983 provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687 n.9 (1999). A cause of action may be brought under § 1983 against "[e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therefor to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Therefore, as part of his § 1983 claim, Plaintiff must show that Defendants Woodlawn and Blood were acting under color of state law, or, in other words, that they were state actors.

The state action doctrine requires that a court find such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself.  *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823, (7th Cir. 2009).  The Seventh Circuit Court of Appeals groups the various tests for determining when the actions of private citizens constitutes state action into two broad groups: (1) situations where a state effectively directs, controls, or encourages the actions of a private party; and (2) situations in which a state delegates a public function to a private entity.  *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996).

(3)     *Unconstitutional Searches*

The Fourth Amendment to the Constitution protects citizens from unreasonable searches and seizures.  A warrantless search of a residence is presumptively unreasonable under the Fourth Amendment, but a search without a warrant is permissible if the authorities obtain voluntary consent from the individual whose property is to be searched.  *United States v. Saadeh*, 61 F.3d 510, 517 (7th Cir 1995).   On a summary judgment motion, once the defendant presents evidence that the plaintiff consented to a search, the plaintiff, who bears the ultimate burden of proof on the issue, must designate some evidence to show that he did not consent in order to establish a triable issue of fact for a jury to consider.  *See Valance v. Wisel*, 110 F.3d 1269, 1278–79 (7th Cir. 1997)

**C.    Facts**

The facts the Court assumes to be true for the purposes of summary judgment are as follows[2]: GHA is a municipal corporation that operates public housing facilities in the City of Gary. Woodlawn is a private management company that contracted with GHA to provide property management services for some GHA's properties, including the Al Thomas High Rise. Jana Blood is an on-site manager for Woodlawn.  Under its agreement with GHA, Woodlawn is

---

[2] Most of the facts assumed to be true are taken from the materials submitted by Woodlawn and Blood in support of their motion for summary judgment.  Plaintiff submitted a response to the motion on August 23, 2011, (DE 82) in which he asserts facts that differ from their version of events.  However, he failed to sign the document under penalty of perjury.  By its order of February 15, 2012 (DE 88), the Court gave Plaintiff the opportunity to refile the document under penalty of perjury.  On March 7, 2012, he filed another response (DE 90) that is virtually identical to the August 23 response, but once again failed to sign it under penalty of perjury.  Under these circumstances the Court cannot consider his statements in either the August 23 or the March 7 filing in ruling on the summary judgment motion.  *See Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985) ("Arguments and factual assertions . . . unsupported by affidavits, cannot be given any weight [in ruling on a motion for summary judgment].")

obligated to enforce the rules, regulations, policies, and procedures of GHA.

GHA employs Gary Police Department officers to work as security officers at the Al Thomas High Rise, under the supervision of the security coordinator, also a GHA employee. At the time of the incident described in Plaintiff's complaint, Jeffrey Hornyak was one of the security officers and Clarence Hightower was the security coordinator. The security officer job description provides that such officers report to the security coordinator. The job description does not mention any authority of Woodlawn or its employees to give orders, assignments, or direction to security officers.

On August 10, 2009, Gerald Smith, a resident of the Al Thomas High Rise, and Plaintiff's neighbor, complained to Blood and Officer Hornyak about Plaintiff. He told them that he had been receiving threats from Plaintiff and that he heard gunshots and smelled gun smoke coming from Plaintiff's apartment on August 9, 2009. Officer Hornyak decided to speak with Plaintiff and to ask if he could search Plaintiff's apartment for weapons. He asked Blood and another Woodlawn employee, Maria Eubanks, to accompany him. Blood did not request, order, or encourage Officer Hornyak to search Plaintiff's apartment.

Officer Hornyak knocked on Plaintiff's door. When Plaintiff answered, Officer Hornyak told him about Smith's complaints and asked if he could search the apartment for weapons. Plaintiff told him to "come on in, do what you gotta do." (Blood Aff., Ex. 3, ¶ 18, Woodlawn Mem. Supp. Mot. Summ. J., DE 75-3.) After Officer Hornyak entered the apartment with Blood and Eubanks, Plaintiff stated that he did not want the search done without a search warrant. (*Id.*, ¶ 20.) Officer Hornyak reminded Plaintiff that he had just given his permission to search the apartment and Blood informed him that his lease allowed GHA to enter a tenant's apartment in

the event of an emergency. Officer Hornyak told Plaintiff he could obtain a search warrant, walked into the building hallway and contacted Captain Hightower, the security coordinator for the GHA. Officer Hornyak and Captain Hightower agreed that a warrant was not required.

Blood states that before Officer Hornyak returned to the apartment, Plaintiff consented to the search of his apartment, stating that he had nothing to hide. According to Officer Hornyak, while he was still outside the apartment Plaintiff told him he could look for whatever he was looking for. Both Blood and Officer Hornyak state that Officer Hornyak asked Plaintiff specifically if he was giving permission for the search and Plaintiff said yes. Officer Hornyak proceeded to search Plaintiff's apartment while Blood and Eubanks stood just inside the door.

### D.     Discussion

The Court concludes that Woodlawn and Blood were not state actors for the purpose of § 1983. There is an argument that because GHA contracted with Woodlawn, Blood's employer, to provide property management services for a public housing complex, it delegated a public function to a private entity, thereby making Woodlawn and Blood state actors. However such delegation has been found only in very narrow circumstances. For example, in *Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996), the court found that a guard employed by a private security company with whom the Chicago Housing Authority ("CHA") had contracted to provide security in the lobbies of CHA buildings was not a state actor, even though he was authorized to carry a handgun, arrest people for criminal trespass, and use deadly force in self-defense. *Id.* at 906. The court stated that a private entity will be deemed a state actor if it performs functions that are traditionally the exclusive prerogative of the State. *Id.* at 905. The court noted that the

Supreme Court has found very few functions that fit within this category of state action: election of public officials and operation of a company town. *Id.* (citations omitted). Moreover, the plaintiff in a § 1983 action bears the burden of showing that a private actor is performing functions that are traditionally the exclusive prerogative of the State. *See Wittstock v. Mark A. Van Sile Inc.*, 330 F.3d 899, 902, (6th Cir. 2003). Management of a housing complex cannot be said to be a function that is exclusively the prerogative of the state.

Nor do the facts in this case present a situation where a state actor directs, controls, or encourages the actions of a private party. Officer Hornyak made his own decision to call on Plaintiff and search his apartment. He asked Blood to accompany him to the apartment but did not enlist her to participate in the search. Indeed, all Blood did was state her understanding that Plaintiff's lease authorized a search in the case of an emergency and stand inside the apartment door while Officer Hornyak searched. Accordingly, Plaintiff's § 1983 claim against Woodlawn and Blood fails.

**E.     Conclusion**

The motion of Defendants Jana Blood and Woodlawn Community Development Corporation for summary judgment (DE 72) is GRANTED.

SO ORDERED on March 27, 2012.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
