# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| SAMUEL POPE JR., | |
| Plaintiff, | |
| v. | Civil Action No. 2:09-CV-301 JVB |
| GARY HOUSING AUTHORITY, et al. | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants Gary Housing Authority, Jeffrey Hornyak, and Clarence Hightower (sometimes collectively referred to as the "GHA Defendants") (DE 76).

**A.  Background**

Samuel Pope, a pro se plaintiff, is a resident of a Gary Housing Authority ("GHA") unit known as the Al Thomas High Rise.[1] His claims against Defendants GHA, officers Hornyak, Gonzalez, and Hightower, the Gary Police Department, Woodlawn Community Development Corporation and its employee, Jana Blood, arise from a search of his apartment on August 10, 2009. He brings this action under 42 U.S.C. § 1983, alleging that the Defendants violated his Fourth Amendment right to be free from unreasonable searches.

---

[1] Plaintiff was originally represented by counsel, but his attorney has withdrawn and he has been unable to obtain new counsel. Defendants Woodlawn and Blood served Plaintiff with the notice to pro se litigants required by Northern District of Indiana Local Rule 56-1(f).

**B.     Legal Standards**

**(1)     *Summary Judgment***

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**(2)** *Section 1983 Standard*

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of his rights guaranteed by the Fourth and Fourteenth Amendment. Section 1983 provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687 n.9 (1999). A cause of action may be brought under § 1983 against "[e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therefor to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

**(3)** *Unconstitutional Searches*

The Fourth Amendment to the Constitution protects citizens from unreasonable searches and seizures. A warrantless search of a residence is presumptively unreasonable under the Fourth Amendment, but a search without a warrant is permissible if the authorities obtain voluntary consent from the individual whose property is to be searched. *United States v. Saadeh*, 61 F.3d 510, 517 (7th Cir 1995).

**C.** **Facts**

The facts the Court assumes to be true for the purposes of summary judgment are as follows: GHA is a municipal corporation that operates public housing facilities in the City of Gary. GHA employs Gary Police Department officers to work as security officers at the Al Thomas High Rise, under the supervision of the security coordinator, also a GHA employee. At

the time of the incident described in Plaintiff's complaint, Jeffrey Hornyak was one of the security officers and Clarence Hightower was the security coordinator.

On August 10, 2009, Gerald Smith, a resident of the Al Thomas High Rise, and Plaintiff's neighbor, complained to Blood and Officer Hornyak about Plaintiff. He told them that he had been receiving threats from Plaintiff and that he heard gunshots and smelled gun smoke coming from Plaintiff's apartment on August 9, 2009. Officer Hornyak decided to speak with Plaintiff and to ask if he could search Plaintiff's apartment for weapons. He asked Blood and another Woodlawn employee, Maria Eubanks, to accompany him.

Officer Hornyak knocked on Plaintiff's door. When Plaintiff answered, Officer Hornyak told him about Smith's complaints and asked if he could search the apartment for weapons. After Officer Hornyak entered the apartment with Blood and Eubanks, Plaintiff stated that he did not want the search done without a search warrant.[2] Officer Hornyak reminded Plaintiff that he had just given his permission to search the apartment and Blood informed him that his lease allowed GHA to enter a tenant's apartment in the event of an emergency. Officer Hornyak told Plaintiff he could obtain a search warrant, walked into the building hallway and contacted Captain Hightower, the security coordinator for the GHA. Officer Hornyak and Captain Hightower agreed that a warrant was not required.

The lease provision on which the GHA Defendants rely to justify the search provides:

> Tenant agrees that the duly authorized agents, employees or representatives of GHA will be permitted to enter the Tenant's premises (dwelling unit) for the purpose of examining the condition thereof for making repairs, replacements,

---

[2]There is a conflict between Officer Hornyak's affidavit and Blood's affidavit concerning what Plaintiff said about a warrant. Blood states Plaintiff said he said he did not want the search the search done without a warrant (Ex. D to GHA Defs.' App., ¶ 20; DE 77-, while Officer Hornyak states he merely asked whether a warrant was needed. (Ex. G to GHA Defs.' App., ¶ 25; DE 77-8 at 4.)

4

> alterations or improvements. Such entry may be made only during reasonable
> hours and on a date no sooner than two days after advance notice in writing
> delivered to the premises, specifying the date, time and purpose of the entry,
> provided however, that GHA shall have the right to enter Tenant's premises
> without prior notice to Tenant if GHA reasonably believes that an emergency
> exists which requires such entrance. After any such emergency entrance, GHA
> shall leave on the premises a written statement specifying the date, time and
> purpose of such entry, prior to leaving the premises.

(Blood Aff. Ex. B, DE 75-11, 4.)

Blood states that before Officer Hornyak returned, Plaintiff consented to the search of his apartment, stating that he had nothing to hide. According to Officer Hornyak, while he was still outside the apartment Plaintiff told him he could look for whatever he was looking for. Both Blood and Officer Hornyak state that Officer Hornyak asked Plaintiff specifically if he was giving permission for the search and Plaintiff said yes. However, Plaintiff stated in his answers to interrogatories, which were signed under the penalties of perjury, that he told Blood and Hornyak he was going to call the police to make them leave. According to Plaintiff, they told him they were the police and that there was nothing he could do. Plaintiff further stated that he did not want them there but was afraid of them because Hornyak had a gun.

Officer Hornyak proceeded to search Plaintiff's apartment while Blood and Eubanks stood just inside the door. Plaintiff followed Officer Hornyak as he searched. Plaintiff allowed him to use a cooler as a stepstool and assisted him in opening a briefcase that had a combination lock.

Officer Hornyak is currently employed as a Gary Police Department ("GPD") detective corporal. He has been a sworn officer with the GPD since 1999. His training includes attendance at the Indiana Law Enforcement Academy for eighteen weeks of courses, including at least two classes on search and seizure. He is required to attend at least twenty-four hours of

continuing education and training a year.  His training has included legal developments, including Fourth Amendment rights.  He has completed approximately 700 hours of police education and training.  No civilian complaints have been filed against him with the GPD, nor has any disciplinary action ever been taken against him for his conduct at the GPD.  Hornyak was hired by GHA as a security officer around 2004 and since about 2007 has been assigned to work at the Al Thomas building.  No complaints have been filed against Hornyak at the GHA; he has never been disciplined for his work as a GHA security officer.

Officer Hightower worked for GPD from 1997 until retired with the rank of watch commander in 2008.  In that position he was responsible for the supervision and training of all law enforcement divisions assigned to the first shift.  He has over 600 hours of law enforcement training.  His GPD record is free of civilian complaints and disciplinary actions.  Since December 2008, Hightower has been GHA's coordinator of security.  His responsibilities include assessing the security needs and implementing security measures for all of the GHA properties.

**D.     Discussion**

**(1)    *Municipal Liability***

In his complaint Plaintiff alleges that GHA engaged in a custom and practice of employing unqualified and untrained personnel to provide security for Plaintiff's apartment complex.  A failure to train can give rise to § 1983 liability.  *Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  However, there is no evidence in the record of a custom or practice of employing unqualified security officers in this case.  In fact, the record indicates that both Officer Hornyak

6

and Officer Hightower received extensive training in proper police procedures. Furthermore, the lack of complaints and disciplinary actions against the officers shows that GHA had no notice that their training was inadequate. Nor is there any evidence in the record that GHA failed to properly screen these officers under *Kitzman-Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2007). Accordingly, the Court grants summary judgment in favor of GHA on the issue of whether Officers Hornyak and Hightower were properly trained and screened.

**(2)** *Plaintiff's Consent to the Search*

The GHA Defendants first contend that Plaintiff consented to this search by signing a lease in which he waived his Fourth Amendment rights. The Court disagrees. The lease provision quoted above falls far short of being a blanket waiver of Plaintiff's Fourth Amendment rights. In context, it is most reasonably construed as authorizing GHA representatives to enter an apartment to deal with maintenance emergencies when the resident is not at home; it does not even mention conducting searches.

Even if the lease provision is read more broadly to cover law enforcement emergencies, the situation that prompted the search—an alleged shooting that occurred at least twelve hours before the search—does not constitute an emergency or exigent circumstances. The exigent circumstances doctrine presents an exception to the Fourth Amendment prohibition against warrantless searches and seizures. *United States v. Rivera*, 825 F.2d 152, 156 (7th Cir. 1987). Exigent circumstances arise when "there is a compelling need for official action and no time to secure a warrant." *Id.* Exigent circumstances may exist when police reasonably believe that their safety or the safety of others may be threatened. *United States v. Hardy*, 52 F.3d 147, 149

7

(7th Cir. 1995). Here, even though Officer Hornyak had information that Plaintiff might have a firearm, he nonetheless went to his apartment, knocked on his door, and asked for his consent to search for a firearm. He even asked civilians to accompany him to the apartment. These are not the actions of a law enforcement officer who believed that a suspect presents an immediate danger to public safety. Plaintiff was not aware that he was the target of police interest until Officer Hornyak told him so. There was no compelling need for immediate police action and Officer Hornyak had ample time before he approached Plaintiff to secure a search warrant. Accordingly the warrantless search of Plaintiff's apartment is not justified by the exigent circumstances doctrine.

The GHA Defendants maintain that Plaintiff's nonverbal conduct shows that he consented to the search. The Court believes his conduct is subject to more than one interpretation. It is consistent with the behavior of someone who has agreed to permit the search but also with someone who is afraid to resist and doesn't want his property destroyed. Mere acquiescence to a claim of lawful authority does not constitute voluntary consent. *United States v. Nafzger*, 965 F.2d 213, 216 (7th Cir. 1992). The undisputed facts show that Plaintiff was told twice that he had already consented to the search by signing his lease and that no warrant was required. Whether Plaintiff voluntarily consented to the search is a question of fact for a jury to resolve.

**(3)** *Qualified Immunity*

Qualified immunity serves to protect those public officials who have violated a constitutional right when the contours of that right were not sufficiently clear at the time to

enable a reasonable official to know that his conduct was prohibited. *Holmes v. Village of Hoffman Estate*s, 511 F.3d 673, 687 (7th Cir 2007). This does not mean, however, that official action is protected by qualified immunity unless the very action in question has previously been held unlawful. It is enough that in light of pre-existing law, the unlawfulness is apparent. *McAllister v. Price*, 615 F3d 877, 884 (7th Cir. 2010).

Without question, the contours of the exigent circumstances exception to the warrant requirement were clearly established at the time Officers Hornyak and Hightower determined that public safety concerns justified a warrantless search. A reasonable officer should have known that there was no immediate danger and that there was time to get a warrant.

Officers Hornyak and Hightower also claim they are entitled to qualified immunity for relying on the lease provision. While there is no case law on point, the Court determines that a reasonable officer reading the provision could not conclude that it conferred authority to conduct a warrantless search of Plaintiff's apartment under these circumstances. The provision does not mention authority to search, but only to enter, and only in an emergency, which did not exist here. There is no evidence that either officer had even read the lease provision. They may have relied on Blood's representation that the lease sanctioned the search. If so, nothing in the record suggests that Blood has any expertise in Fourth Amendment law. A reasonable security officer would not rely on the opinion of an apartment complex manager that a lease clause justifies a warrantless search of a residence for evidence of a crime.

Nor can Officers Hornyak and Hightower claim qualified immunity on the basis of Plaintiff's voluntary consent. *United States v. Nafzger* is instructive on whether a reasonable officer could conclude he had Plaintiff's voluntary consent. There law enforcement officers

9

went to Nafzger's farm with a search warrant to search a particular truck. Nafzger read the warrant and then led the officers to a shed and showed them a truck matching the description in the warrant. The officers then told Nafzger he had to sign a standard FBI consent to search form before the truck could be searched. He read the form and signed it. After finding the search warrant invalid because it did not specify the place to be searched for the truck with sufficient particularity (it mentioned only the Western District of Wisconsin), the court determined that Nafzger's consent was involuntary because it was produced by showing him a defective warrant that falsely implied the authorities had a search warrant for his premises. His consent to the search was found to be acquiescence to a claim of authority rather than voluntary consent. *Nafzger*, 965 F.2d at 217. Here Plaintiff was told he had no right to refuse consent because he gave up that right in his lease. A reasonable officer could not conclude that his consent was voluntary in these circumstances. Accordingly, Officers Hornyak and Hightower are not entitled to qualified immunity.

**E.    Conclusion**

The motion of Defendants for summary judgment (DE 76) is GRANTED in part and DENIED in part. Summary judgment is GRANTED on Plaintiff's claims against GHA for failure to train and screen its security officers. Summary judgment is DENIED with regard to all other issues.

SO ORDERED on March 27, 2012.

s/ Joseph S. Van Bokkelen<br>
Joseph S. Van Bokkelen<br>
United States District Judge